# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **FAIRFIELD, AL, CITY OF** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **CIVIL ACTION NO.** |
| ] | **2:17-CV-1064-KOB** |
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

Before the court is the City of Fairfield's second amended complaint. (Doc. 19). This court has the United States's "Motion to Dismiss Amended Complaint" (doc. 20); the City's motion to amend its second amended complaint (doc. 23); the United States's "Motion to Strike" the City's response to its motion to dismiss (doc. 26); and the City's "Motion to Exclude Exhibit B" (doc. 27).

The City filed its first complaint, styled as a petition to quash summons, on June 23, 2017. The United States moved to dismiss the first complaint for lack of subject-matter jurisdiction, contending that the City had failed to plead any valid waiver of the United States's sovereign immunity. This court granted the United States's motion and dismissed the City's first complaint without prejudice, granting the City leave to file the second amended complaint now before the court.

The United States now moves to dismiss the City's second amended complaint, arguing that the City again fails to establish a waiver of the United States's sovereign immunity relevant to the City's allegations. (Doc. 22). The United States also argues that the City fails to plead

exhaustion of administrative remedies under 26 U.S.C. § 7433, which provides a limited waiver of the United States's sovereign immunity.

The City responded to the United States's latest motion to dismiss, and, in a separate filing, asks the court to allow it to amend its second amended complaint. (Docs. 22, 23). The City's proposed amendment is before the court. The City also moves to strike "Exhibit B" (doc. 23-2), which is a tax document the City avers it accidentally filed alongside its motion to amend its complaint. (Doc. 27).

The United States, for its part, moves to strike the City's response to the motion to dismiss, which looks like an independent attempt to amend the City's second amended complaint outside the City's formal request. (Doc. 26).

The court will DENY the United States's motion (doc. 26) to strike the City's response (doc. 22). However, amending a complaint through a response to a motion to dismiss is inappropriate and confusing. *See* Fed. R. Civ. P. 8(a)(2) (requiring a short and *plain* statement that the pleader is entitled to relief). Accordingly, the court considers the City's filing (doc. 22) only as a response to the United States's motion to dismiss and nothing more.

The court will DENY the City's motion to amend its second amended complaint. (Doc. 23). The City's proposed addition to its complaint does not add anything of substance to the second amended complaint nor does it cure the second amended complaint's defects. The court will GRANT the City's motion to strike "Exhibit B" because it was inadvertently filed. (Doc. 27; Doc. 23-2).

Finally, the court will GRANT the United States's motion to dismiss the second amended complaint. The court will DISMISS the City's complaint without leave to amend. After addressing the United States's first motion to dismiss, this court gave the City an opportunity to

correct the first complaint's myriad deficiencies. The City squandered that opportunity. The second amended complaint is woeful; it contains even more deficiencies than the first complaint and adds patently frivolous legal allegations to the mix. The court will accordingly DIRECT the Clerk of Court to close this case.

## STANDARD OF REVIEW

As with the City's first complaint, the court takes the allegations in the City's second amended complaint (doc. 19) as true for purposes of examining its subject-matter jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In addition to arguing that the court lacks jurisdiction, the United States asserts that the City's second amended complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## FACTS

*A. Background*

As with its first complaint, the City's second amended complaint contains few coherent facts and provides insufficient background. The court makes its best attempt at piecing together the City's allegations and claims.

The City admits that it owes the IRS significant sums of unpaid taxes. The City cannot immediately pay all of what it owes, so it has looked to alternative methods of payment. To that end, City officials had a conference call with an IRS officer on November 16, 2016.

The City appears or attempts to incorporate three affidavits by reference into its second amended complaint. City officials Ed May, Dianne Cain, and Frank Woodson each aver that on November 15, 2016,[1] they participated in a conference call with the IRS officer about the City's unpaid taxes. (Doc. 19-1; Doc. 19-2; Doc. 19-3). During this conference call, the IRS officer indicated that the IRS would not take action to collect the City's unpaid taxes. Furthermore, the officer said that the IRS would work with the City on a payment plan or other relief. The City's complaint lacks allegations about whether it took any steps immediately after the November conference call to submit to the IRS an offer-in-compromise or installment plan agreement in writing.

In March 2017, the IRS notified the City that it intended to levy on funds in the City's bank accounts. (Doc. 19 ¶ 11). The City states that, at that time, the IRS had not yet notified the

---

[1] The text of the complaint indicates that the conference call occurred on November 16, 2016, but the affidavits state that the conference call occurred on November 15.

4

City that the relief proposed[2] in the November 2016 conference call would not suffice. The IRS began levying on the City's bank accounts, and, in total, garnished an amount "in excess of $42,311.23." (Doc. 19 ¶¶ 13, 19). On May 1, 2017, the City submitted an offer-in-compromise to the IRS. (*Id.* ¶ 15).

The Internal Revenue Code provides administrative review mechanisms that a litigant must exhaust before bringing a claim in federal court. *See* 26 C.F.R. § 301.6330-1(f). The City alleges that on March 24, 2017, it appealed "the installment agreement rejection through the [IRS's] Collection Appeals Program (CAP) and requested a return of the wrongfully levied proceeds through the CAP proceeding." (Doc. 19 ¶ 14). The City does not indicate the outcome of its appeal or whether it had any hearing as part of the appeal.

The City also attaches to its complaint several documents, including the IRS's notice of levy. The notice is dated March 7, 2017, and notifies the City that the IRS has sent a request to Compass Bank to levy $42,311.23 from the City's accounts. (Doc. 19-4). Another document is a June 6, 2017, notification to the City of an IRS summons to Compass Bank. (Doc. 19-7). The last document is the summons itself, which compels Compass Bank to provide to the IRS information about the City's bank accounts by July 7, 2017.

   *B. Allegations*

The City appears to complain primarily that the IRS's notice of levy and/or summons lacked valid Office of Management and Budget ("OMB") "control numbers." (*See* doc. 19 ¶¶ 23-24, 33, 36). From there, the City concludes that the IRS's levy of funds from the City's accounts was unauthorized. The City's contention is akin to a "fruit of the poisonous tree" argument: because the IRS improperly notified the City and improperly obtained its bank records

---

[2] The complaint does not identify what specific relief the City proposed in the November conference call.

5

using documents without OMB control numbers, the IRS's subsequent levy of the City's funds using that information and relying on those notifications was, in the City's view, improper. The City's second amended complaint contains four counts, plus an unnumbered "Legal Claim."

In its first count, the City alleges that the IRS violated the Paperwork Reduction Act, 44 U.S.C. § 3512, which the City argues prohibits the IRS from issuing documents without an OMB control number. The City calls the IRS's violation of the Paperwork Reduction Act a "systemic" and "pervasive" scheme that "has no bounds." It adds that "this scheme must be stopped immediately" because, in the City's view, the IRS's "abuse of power" "threatens to make a mockery of our democratic systems." (Doc. 19 ¶¶ 26, 28). And the City affirmatively states that "[t]his is not an isolated incident." (*Id.*). But the City's complaint lacks factual allegations about the other alleged incidents in which the IRS violated the Paperwork Reduction Act in the same way.

In the second count, the City alleges that the IRS violated the Privacy Act, 5 U.S.C. § 552a, by collecting information with unauthorized documents (*i.e.*, the documents without an OMB control number) and then providing that information to Compass Bank. (Doc. 19 ¶ 32). In the third count, the City states that the IRS violated the Fourth Amendment by using unauthorized documents to seize the City's money. In the fourth count, the City notes the principles contained in the Taxpayer Bill of Rights, 26 U.S.C. § 7803(a)(3), but does not make any allegations. (*See* doc. 19 ¶¶ 40-41).

Lastly, the City includes what it titles a "Legal Claims" section. The City's "Legal Claims" section comes after its four enumerated counts. In this "Legal Claims" section, the City observes that 26 U.S.C. § 7433 provides taxpayers a private right of action when an IRS officer disregards any provision of the Internal Revenue Code or any regulation promulgated under the

Code. In the same section, the City observes that the Internal Revenue Code prohibits levies when an installment agreement is pending before the Secretary. The City then alleges that its "offer to provide relief"—presumably a written offer to create an installment agreement or its offer in compromise submitted May 1, 2017—was pending before the Secretary when the IRS levied and garnished the City's funds.

## DISCUSSION

The court will DISMISS the City's Paperwork Reduction Act and Fourth Amendment allegations FOR LACK OF JURISDICTION. The court will DISMISS WITH PREJUDICE the City's Privacy Act claim for failure to state a claim upon which relief can be granted. Furthermore, these allegations rest on a frivolous premise that the IRS's failure to include an OMB control number on its collection documents prohibited it from levying the City's funds or subpoenaing Compass Bank.

The City's second amended complaint contains one allegation over which the court has jurisdiction and is not frivolous. The City asserts that the IRS violated the Internal Revenue Code or its regulations by levying funds while the City's proposed offer-in-compromise or installment agreement was pending before the IRS. However, the court will DISMISS that allegation WITHOUT PREJUDICE because the City failed to plead whether and how it exhausted any administrative remedies available to it before filing a lawsuit in this court.

To start, the court discusses the City's claim that the IRS levied funds during the pendency of an installment agreement or offer in compromise. Next, the court discusses the City's allegations under the Paperwork Reduction Act, Fourth Amendment, and Privacy Act that the IRS used "unauthorized" or "fake" documents to collect the City's unpaid taxes. Lastly, the

7

court briefly discusses Count 4, which contains the City's statements about the Taxpayer Bill of Rights.

      A.      *Levy During Pendency of Offer-In-Compromise or Installment Agreement ("Legal Claims")*

The court first looks to the City's claim that the IRS violated its own regulations by levying funds while an offer in compromise was pending before the Secretary. As in its first motion to dismiss, the United States argues that the City has failed to plead a waiver of sovereign immunity. Sovereign immunity deprives the court of subject-matter jurisdiction absent the federal government's waiver of its immunity. *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000).

To establish such a waiver of the United States's sovereign immunity, the City points to 26 U.S.C. § 7433. Section 7433 waives the United States's sovereign immunity and provides a private right of action in certain circumstances. Specifically, the statute grants that waiver to any taxpayer if an IRS officer negligently, recklessly, or intentionally disregards any provision of the Internal Revenue Code or regulations promulgated under the Code. 26 U.S.C. § 7433.

The City alleges that the IRS improperly levied funds to recoup the City's unpaid taxes during the pendency of an offer-in-compromise or installment agreement. While the IRS may collect unpaid taxes from any person by way of levy, 26 U.S.C. § 6331(a), the IRS also provides methods through which taxpayers can mitigate their inability to pay a tax deficiency to the IRS immediately and in full. For example, a taxpayer may submit an "offer in compromise" to the Secretary, and "[n]o levy may be made . . . on the property . . . of any person with respect to unpaid tax—during the period that an offer-in-compromise by such person . . . is pending with the Secretary." *Id.* § 6331(k)(1)(A); *see also* 26 U.S.C. § 7122. Similarly, the IRS may not levy

funds while an offer for an installment agreement is pending. 26 U.S.C. § 6331(k)(2)(A); *see also* 26 U.S.C. § 6159.

The court has jurisdiction to consider this claim because the City alleges a violation of 26 U.S.C. § 6331(k)(1)(A), (k)(2)(A). As noted above, § 7433 of the Internal Revenue Code provides a waiver of the United States's sovereign immunity for claimed violations of the Code. *Id.* § 7433.

However, the City's second amended complaint fails to allege *facts* from which a jury could conclude that the City exhausted its administrative remedies before bringing its claim to this court. Although the City finds its way past sovereign immunity on this claim, "[a] judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1).

The City alleges that it brought a claim through the IRS's Collection Appeals Program. But, under the Internal Revenue Code and its regulations, a taxpayer must make administrative claims regarding denied installment agreements and offers-in-compromise in a Collection Due Process hearing—different from the Collection Appeals Program—before such claims are subject to judicial review. *See* 26 C.F.R. § 301.6330-1(f); *see also* 26 U.S.C. § 7122(e); 26 C.F.R. § 301.7433-1(e) (requiring administrative claims to be sent in writing and noting other procedural requirements); *Offiler v. Commissioner*, 114 T.C. 492, 498 (2000) (finding that review of taxpayer's case through the Collection Appeals Program did not confer jurisdiction on the tax court). The City fails to allege whether it brought these claims in a Collection Due Process hearing.

The City also observes, correctly, that failure to exhaust administrative remedies is not a jurisdictional issue under 26 U.S.C. § 7433. *Galvez v. IRS*, 448 Fed. Appx. 880, 885 (11th Cir. 2011). However, failure to exhaust administrative remedies requires dismissal nonetheless. *Id.* at 887. ("Having avoided the Scylla of the exhaustion requirement[] in . . . [§ 7433] acting as [a] jurisdictional bar[] to suit, the taxpayers nonetheless run into the Charybdis of failure to state a claim."). And the City has failed to plead whether and how it exhausted the administrative remedies available to it under the Internal Revenue Code and the IRS's regulations. For that reason, the court will DISMISS WITHOUT PREJUDICE the City's allegation that the IRS violated §§ 7433 and 6331 by levying funds while an offer-in-compromise or installment agreement was pending before the Secretary.

As a final note on this issue, the City's complaint is self-contradictory and contains conflicting and confusing factual assertions regarding the dates on which the IRS took action against the City. For example, the City alleges that the IRS levied funds from the City's accounts at Compass Bank in March 2017. However, the City also indicates that the IRS did not subpoena Compass Bank for information about the City's accounts until June 2017. Similarly, in one place, the City alleges that it had a pending offer-in-compromise or installment agreement before the IRS levied the City's funds in March 2017, but in another place contends that it did not submit an offer-in-compromise until May 2017. Even if the City had pleaded exhaustion of remedies, the court would have difficulty concluding that the second amended complaint meets Rule 8(a)(2)'s mandate of a short and *plain* complaint because of its contradictions.

  B. *Paperwork Reduction Act, Privacy Act, and Fourth Amendment (Counts 1, 2, and 3).*

Next, the court addresses the City's assertion that the IRS acted unlawfully by using documents without OMB control numbers to levy on the City's funds. The City provides three

ostensibly-legal bases for this claim: the Paperwork Reduction Act, the Privacy Act, and the Fourth Amendment. The government argues that the City's claims should be dismissed for failure to plead any valid waiver of the United States's sovereign immunity.

The City appears to point to 26 U.S.C. § 7433, but that statute only waives the United States's sovereign immunity for claims under the Internal Revenue Code and regulations promulgated under it. But the Internal Revenue Code and its regulations do not include the Paperwork Reduction Act, 44 U.S.C. § 3512, and the Fourth Amendment. Accordingly, the City cannot use § 7433 to elude sovereign immunity for those allegations. The City identifies no other waiver of the United States's sovereign immunity for these claims. For those reasons, the court will DISMISS the allegations in Counts 1 and 3 of the City's second amended complaint because they are barred by sovereign immunity and thus the court lacks jurisdiction to hear these claims.

But the Privacy Act does contain a waiver of the United States's sovereign immunity for an agency's violations of § 552a(b). 5 U.S.C. § 552a(g)(1)(D). Under § 552a(b), "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ." *Id.* § 552a(b).

In Count 2, the City contends that the IRS violated § 552a(b) by "collect[ing] information obtained with unauthorized documents and provid[ing] those unauthorized documents to Compass Bank to obtain the City's funds." (Doc. 19 ¶ 32). And in its response to the United States's motion to dismiss, the City argues that the Privacy Act prohibits the "nonconsensual disclosure of agency records"; the City explains that the IRS violated the Privacy Act by "concocting non-valid, unenforceable and fake instruments with the Plaintiff's personal and

11

private information and willfully sen[ding] that information to the Plaintiff's bank officers."
(Doc. 22 at 3-4). The City asserts that "the Internal Revenue Service has attempted to sabotage the [the City] by [its] reckless and intentional acts." (*Id.* at 11). Essentially, the City argues that by using documents without OMB control numbers in violation of the Paperwork Reduction Act, the City also violated the Privacy Act by using "unauthorized" or "fake" documents to obtain the City's banking information from Compass Bank.

In its motion to dismiss, the United States argues that the City cannot bring a claim under the Privacy Act because 26 U.S.C. § 7433's exclusivity provision preempts the Privacy Act for claims related to the collection of taxes. But, § 7433's exclusivity provision applies, in relevant part, only to IRS officer actions that violate the Internal Revenue Code or its regulations. 26 U.S.C. § 7433. The exclusivity provision, therefore, does not apply to conduct that violates the Privacy Act, which is not part of the Internal Revenue Code. *See id.*

But avoiding the exclusivity provision does not carry the day for the City. The City fails to state a claim under the Privacy Act upon which relief can be granted. Although the United States does not address whether the City's Privacy Act claim fails to state a claim upon which relief can be granted, the court finds that this claim warrants a *sua sponte* ruling to that effect. *See Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1248 (11th Cir. 2015) (observing that district courts can *sua sponte* dismiss patently frivolous complaints without notice).

The City's "OMB control number" claim qualifies as patently frivolous. The Paperwork Reduction Act contains a statutory exemption for agency investigations of specific entities, such as the IRS investigation into the City's unpaid taxes. *See* 44 U.S.C. § 3518(c)(1)(B) ("[T]his subchapter shall not apply to the collection of information . . . during the conduct of . . . an administrative action or investigation involving an agency against specific individuals or

12

entities."). So the City's conclusion that the IRS's documents were "fake" and "unauthorized" because it did not comply with the Paperwork Reduction Act falls flat. Accordingly, the City's allegation that the IRS violated the Privacy Act by using "fake" and "unauthorized" documents also lacks merit. The IRS did not need to put any OMB control number on documents it issued when collecting information relevant to its investigation into the City's tax liabilities.

But § 3518(c)(1)(B) does not stand alone in showing the frivolity of the City's argument. Even cursory research uncovers droves of cases rejecting the City's "OMB control number" theory. *United States v. Neff*, 954 F.2d 698, 699 (11th Cir. 1992) ("Congress did not enact the PRA's public protection provision to allow OMB to abrogate any duty imposed by Congress."); *see, e.g.*, *Antolick v. C.I.R.*, 422 Fed. Appx. 859, 862 (11th Cir. 2011) (affirming Tax Court's imposition of sanctions after *pro se* litigant raised "frivolous" OMB control number argument); *Cargill v. C.I.R.*, 272 Fed. Appx. 756, 757, 759-60 (11th Cir. 2008) (rejecting OMB control number argument and granting Commissioner's motion for sanctions against the *pro se* litigant "[i]n light of the settled case law rejecting the position advanced by" the appellant); *Taliaferro v. C.I.R.*, 272 Fed. Appx. 831, 833 (11th Cir. 2008) ("In addition, we have rejected the argument that a tax return need not be filed because of the absence of an OMB control number because Congress did not condition the statutory duty to file a tax return on a Treasury regulation."); IRS Rev. Rul. 2006-21, 2006-1 C.B. 745 (adding OMB control number argument to IRS-maintained list of commonly-raised "frivolous positions" and observing that "[c]ourts have repeatedly rejected PRA-based arguments on a number of alternative grounds").

And in holding that the lack of an OMB control number on a document issued by the IRS does not make an IRS's collection activity unlawful, the Eleventh Circuit was not alone. *See, e.g.*, *United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991) ("Congress enacted the

[Paperwork Reduction Act] to keep agencies, including the IRS, from deluging the public with needless paperwork. It did not do so to create a loophole in the tax code."); *James v. United States*, 970 F.2d 750, 753 n.6 (10th Cir. 1992) (noting that the lack of an OMB number on IRS notices and forms does not violate the Paperwork Reduction Act).

District courts, too, routinely reject the City's theory. *See, e.g.*, *Woods v. Commissioner, I.R.S.*, 8 F. Supp. 2d 1357 (M.D. Fla. June 12, 1998) ("[D]espite Plaintiff's protests to the contrary, the absence of an OMB control number on the IRS's request for tax information is not tantamount to an illegal action taken by the IRS."); *United States v. Stoecklin*, 848 F. Supp. 1521, 1521 (M.D. Fla. 1994) (finding that the absence of an OMB control number on a document is not a "serious violation" of the Paperwork Reduction Act).[3]

In summary, the City's argument is frivolous. Notably, at least in the Eleventh Circuit cases after *Neff*, only *pro se* litigants have raised this frivolous position. But the destination—dismissal—is the same for the counseled as it is for the *pro se*. The court will DISMISS the City's Privacy Act claim in Count 2 WITH PREJUDICE because of its frivolity.

  C.     *Taxpayer Bill of Rights (Count 4)*

As a final matter, Count 4 of the Amended Complaint notes the language of the Taxpayer Bill of Rights, codified at 26 U.S.C. § 7803(a)(3), part of the Internal Revenue Code. However, the City makes no allegations in Count 4 of the Amended Complaint; the City merely observes that this statute exists but does not explain how or why it would be entitled to relief pursuant to that statute. As to Count 4, the court has no allegation or cause of action to address. To the extent the City sought to assert a claim, the court will DISMISS Court 4 for failure to state a claim upon which relief can be granted.

---

[3] The City cites *Stoecklin* in its response to the United States's motion to dismiss, but fails to acknowledge that the case undercuts its argument. (Doc. 22 at 7).

**CONCLUSION**

The court will GRANT the United States's motion to dismiss the complaint. The court has considered the content of the City's proposed third complaint, and the content purportedly added to the complaint in the City's brief in response to the United States's motion to dismiss. Neither document contains any indication that the City, given the chance at a third complaint, will fix any of the second amended complaint's identified and obvious issues.

The court will DISMISS the City's complaint without leave to amend and DIRECT the Clerk of Court to close this case.

**DONE** and **ORDERED** this 31st day of May, 2018.

*/s/ Karon O. Bowdre*

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE